UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AVELINO CRUZ MARTINEZ | ) | |
| | ) | |
| v. | ) | Case No. 3: 14-CV-00174 |
| | ) | JUDGE TRAUGER |
| UNITED STATES OF AMERICA, | ) | |
| LOUISE W. KELTON, U.S. MARSHAL | ) | |

## **Memorandum**

Petitioner Avelino Cruz Martinez ("Cruz") seeks review of the Magistrate Judge's January 17, 2014 order certifying him for extradition to Mexico, where he faces criminal charges ("Certification Order"). Such an order cannot be appealed, but review is available through a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). Cruz argues that the Certification Order violates his rights under the U.S. Constitution. For the following reasons, the petition for writ of habeas corpus will be DENIED and this action will be DISMISSED.

## **FACTUAL AND PROCEDURAL HISTORY**

Petitioner Avelino Cruz Martinez (hereinafter "Cruz") was born in Mexico but migrated to and from the United States annually, beginning in his teenage years, to do farm work with his father. In 1990, Cruz gained lawful permanent resident status in the United States. Although Cruz has continued to travel on occasion to Mexico, he maintains that he has not been absent from the United States for a full year because an absence for that length of time would cause him to lose his lawful permanent resident status. 8 C.F.R. § 211.1(a)(2).

On December 31, 2005, Samuel Francisco Solano Cruz ("Solano Cruz") and Antolin Cruz Reyes ("Cruz Reyes") were shot and killed in Silacayoapan, a Mexican village in the state of Oaxaca. Witnesses said they saw Cruz shoot these men.

On January 12, 2006, Cruz's wife and brother met with the widow and parents of Solano Cruz at the town clerk in Silacayoapan. These five individuals signed an agreement which required Cruz's wife to pay the widow of Solano Cruz 50,000 pesos. The agreement described Cruz as the "perpetrator" of the "unfortunate act," but he was not present at the meeting.

On January 16, 2006, a relative of Solano Cruz gave a sworn statement to the prosecutor, describing what he had seen on the evening of December 31, 2005. He said that Cruz had parked his car near a public event with many people present and left the car running while he walked up to Solano Cruz. He alleged Cruz had reached out his left hand to shake the victim's hand, and while they were shaking left hands, used his right hand to pull out a gun and fire several shots. These shots allegedly hit primarily Solano Cruz, who died at the scene, but some also hit Cruz Reyes, who died later. Another man gave a similar statement about an hour later.

On February 24, 2006, less than two months after the shootings, the Silacayoapan judge issued a warrant for Cruz's arrest for the charge of Aggravated Homicide with Undue Advantage.

Cruz asserts that neither he nor any of his family members was ever advised of the warrant for his arrest. Cruz states that his father and brother have lived almost continuously in the same community where the shootings took place since 2005, but never were informed about this warrant. Cruz's wife and children continued to live in the same Mexican community until February 2007, at which time Cruz says they moved to the United States to be with him. Cruz argues that it was common knowledge in his village that he had long lived permanently in the

United States. Cruz states that he lived at the same address in Tennessee from 2006 until several years later, when he bought a house. He claims to have used his correct address on all federal immigration documents, on his application for a Tennessee driver's license in 2007, and on all of his federal income tax returns.

On September 11, 2009, a U.S. consular official at the U.S. Embassy in Mexico City sent a request to the Silacayoapan court asking about the outstanding warrant against Cruz. The Silacayoapan court entered an order stating that the warrant was "still pending and executable," and further explained that the penalty for the offense with which Cruz was charged is 40 years. Under Mexican law, a criminal offense's penalty serves also as the statute of limitations.

In May 2010, Cruz applied for U.S. citizenship using the same address he had listed on his driver's license, income tax returns, and immigration documents since 2006. He received U.S. citizenship in October 2010, thereby losing his Mexican citizenship. *See* 8 U.S.C. § 1448 (providing that the oath of naturalization requires renunciation of prior citizenship). In August 2011, Cruz filed an application with federal immigration authorities for his wife and children, who had moved to the United States to join him, so that they could obtain lawful permanent resident status. These family members returned to Mexico to obtain an immigration waiver from the U.S. consulate there, which was required to proceed with their lawful permanent residence applications.

On May 21, 2012, 6 years and 5 months after the shootings, Mexico submitted a request to the United States for Cruz's extradition based on the Silacayoapan warrant. Mexico sought Cruz's provisional arrest under Article 11 of the extradition treaty, which allows a provisional arrest for sixty days "[i]n the case of urgency." United States-Mexico Extradition Treaty, 31 U.S.T. 5059, TIAS 9656 (hereinafter the "Treaty"). At the end of that sixty-day period, the

United States would be required to release the suspect unless Mexico submitted its formal extradition package. Mexico asserted this was a case of urgency because "AVELINO CRUZ MARTINEZ has been located at 218 University Avenue, Apartment 3, Lebaron [sic], Tennessee, 37087; United States of America. It is feared that he may move elsewhere and his whereabouts will become unknown." Case No. 3:13-mj-02042, Docket No. 25, #4 (Exhibit D, Diplomatic Note).

In late 2012 or early 2013, with this extradition request pending, Cruz traveled more than once to Mexico to meet with U.S. consulate officials to get the necessary immigration waivers for his family. Neither Mexican nor American authorities took any action to detain Cruz or otherwise inform him of the warrant or extradition requests that were pending against him.

On June 11, 2013, seven and one-half years after the alleged crime and thirteen months after Mexico submitted its extradition request to the United States, the United States Attorney's office filed on behalf of the United Mexican States a complaint against Cruz, seeking his provisional arrest for the purposes of extradition, along with an affidavit and arrest warrant. The Magistrate Judge granted these motions and the warrant issued on the same day.

On June 21, 2013, Cruz was arrested and appeared before the Magistrate Judge with his appointed attorney from the Federal Public Defender's Office. The Magistrate Judge set the matter for a detention hearing and preliminary hearing on June 26, 2013.

On June 24, 2013, the government filed a motion requesting that defendant be detained pending proceedings in the matter on the basis that he might flee and that he constituted a danger to the public. The government further requested a continuance of three days to prepare for the detention hearing.

4

On June 25, 2013, Cruz filed a motion to dismiss the complaint or, in the alternative, to order discovery. He challenged the provisional arrest warrant, claiming that the United States had not satisfied three requirements to seize a U.S. citizen pursuant to Article 11 of the Treaty, including a showing of urgency, a showing that there was an undertaking to formalize the request for extradition, and a showing of probable cause. In the alternative, Cruz requested that the court require the government to produce any exculpatory materials in its possession, including any records it might have pertaining to a witness Cruz claims was rumored to have been deported from the United States for inappropriate sexual conduct with a minor child.

On June 26, 2013, the date that had been set for a detention hearing and preliminary hearing, the Magistrate Judge continued those matters until July 23, 2013, so that he could familiarize himself with the legal issues presented in this case and the pleadings that had been filed.

At the June 26, 2013 hearing, Cruz again argued that the provisional arrest warrant should not have issued because there had been no showing of "urgency," as required by the Treaty. The government asserted that, under the Treaty, the government is entitled to 60 days to get together the package containing formal discovery and evidence required for a formal extradition request. The AUSA asserted that the review Petitioner was requesting was not a "ripe issue" yet and could not be addressed until "the 60-day appearance." Case No. 3:13-mj-02042, Docket No. 23 at 8 (Hearing Transcript).

On June 27, 2013, Cruz filed his first petition for writ of habeas corpus and emergency request for bail hearing. Case No. 3:13-cv-638, Docket No. 1. This court referred the matter to the Magistrate Judge. Cruz moved for reconsideration, arguing that his habeas petition was essentially an appeal of the Magistrate Judge's decision at the previous day's bail hearing.

5

On June 28, 2013, this court denied the motion to reconsider the referral to the magistrate judge, stating that "it is not clear, at this point, to either Magistrate Judge Knowles or Judge Trauger the extent to which the matter of detention can be separated from the extradition issues. In the interest of judicial economy, it will be for Magistrate Judge Knowles to determine, in the first instance, whether he can consider the matter of detention at an earlier date, separated from the extradition matters." *Id.*, Docket No. 4.[1]

On July 15, 2013, the Magistrate Judge issued an order requiring that the government "produce any exculpatory materials in its possession that would undercut a finding that there is probable cause to believe that Mr. Cruz committed the crimes with which Mexico has charged him" on or before July 19, 2013. *Id.*, Docket No. 29.

On July 23, 2013, the Magistrate Judge held a detention hearing. The government stated that it had turned over all exculpatory material. Case No. 3:13-mj-2042, Docket No. 34 at 3-4 (Hearing Transcript). Cruz objected that the government had not gotten exculpatory evidence from immigration about the circumstances under which one of the witnesses was deported from the United States, which he stated he wanted for impeachment purposes. *Id.* at 6. Although the government had a representative from immigration present at the hearing, it maintained that it did not have to produce that exculpatory evidence because it was not a criminal proceeding. *Id.* at 8.

At this hearing, Cruz called as a witness his current supervisor, who testified that he did not believe Cruz was a flight risk. Cruz also presented the court with his naturalization

---

[1] On October 8, 2013, the Sixth Circuit affirmed this court's order denying bail. On November 18, 2013, the United States Supreme Court denied the writ of certiorari.

document, the warranty deed on his home, and a letter from his employer confirming employment. He asked to be released on bail pending the extradition proceeding. He also repeated the arguments raised in his pleadings related to his position that the provisional arrest warrant had been issued inappropriately because the government had not shown "urgency." *Id.* at 28. The Magistrate Judge took the "bail/detention issue" under advisement. *Id.*, Docket No. 30 (Minute Entry).

At the conclusion of the hearing on July 23, 2013, the Magistrate Judge set a status hearing for August 19, 2013, set to be 60 days after Cruz's arrest, to determine whether the formal extradition package had been filed and, if so, to determine the timing of the extradition hearing.

On July 26, 2013, the Magistrate Judge entered an Order of Detention as to Cruz, concluding that he had not shown he was not a flight risk nor that special circumstances exist which would justify his release on bail, and ordering that he remain detained pending further proceedings in the case. *Id*. Docket No. 33.

On August 7, 2013, the parties appeared before this court for a detention review hearing, in which Cruz argued at length that the Magistrate Judge had improperly authorized the issuance of the provisional arrest warrant and improperly denied his request to be released on bail. Cruz testified at this hearing. In addition to being cross-examined by the government, the court also questioned him about issues related to whether he was a flight risk. After hearing testimony from Cruz and arguments from counsel, the court found that Cruz was not a flight risk but that there were no special circumstances to support releasing him on bail, as required by extradition case law. This court ordered that the Petitioner be detained until further order of the court. *Id.* Docket Nos. 15 (Order), 17 (Hearing Transcript).

7

On August 8, 2013, the Magistrate Judge entered an order denying Cruz's motion to clarify the discovery order. Cruz's motion argued that the government had stated at the July 23, 2013 hearing that it had only asked the State Department for exculpatory material and had not asked the Department of Homeland Security, which houses Immigration and Customs Enforcement, the federal agency that would have the immigration file with details of the basis for the deportation of one of the witnesses to the alleged murders. The Magistrate Judge's order stated that Cruz had misrepresented the government's statements at the July 23, 2013 hearing, that the government had not stated any limitations as to which agency it had asked for exculpatory material, that the court's previous discovery order had given Cruz exactly what he was entitled to, and that there was nothing to be clarified. Case No. 3:13-mj-2042, Docket No. 39.

On August 20, 2013, the United States filed a letter of compliance from the United States Department of State, informing the Director of the Office of International Affairs that the Government of Mexico filed its formal extradition documents within the time frame required by the Treaty. On August 22, 2013, the government filed an additional letter, as requested by the Magistrate Judge, verifying that the formal extradition package contained all of the documents required under Article 10 of the Treaty.

On November 13, 2013, the Magistrate Judge denied Cruz's motion to dismiss the complaint, his supplemental motion to dismiss the complaint and vacate the warrant, and his motion for discovery. He held that the filing of the extradition packet made the legality of the provisional arrest moot and that he had already granted Cruz's initial motion for discovery.

On December 13, 2013, the Magistrate Judge held an extradition hearing based on the formal extradition request that had been filed. Neither side presented proof at this hearing, but

the court received two exhibits from the government without objection. The Magistrate Judge also reviewed the formal extradition request (the "Extradition Packet"). Case 3:13-mj-2042, Docket Nos. 46-1 – 46-15. The exhibits to the Extradition Packet included the arrest warrant, citations to the applicable Mexican penal codes, and a document indicating that Mexico is requesting the extradition of Cruz for two counts of the crime of "aggravated homicide with undue advantage."

On January 17, 2014, the Magistrate Judge entered two orders. The first order denied Cruz's motion to deny certification for extradition, addressing his arguments that the provisional arrest warrant should not have issued without a showing of "urgency," that the statute of limitations and Sixth Amendment precluded his prosecution, and that he was entitled to additional discovery related to communications between the U.S. and Mexico and related to impeachment material he believes exists related to one of the witnesses against him.

The second order issued by the Magistrate Judge on January 17, 2014 is the Extradition Order, of which he now seeks review. In that order, the Magistrate Judge enumerated his findings as follows: (1) the extradition court has subject matter jurisdiction under 18 U.S.C. § 3184; (2) the extradition court possesses personal jurisdiction over Cruz; (3) the declaration of Julie B. Martin, an Attorney Advisor in the Office of the Legal Adviser for the Department of State, establishes that the relevant and applicable treaty provisions in full force and effect between the U.S. and Mexico are found in the Extradition Treaty; (4) Ms. Martin's declaration also establishes that the offense for which extradition is sought is punishable by a period of incarceration of at least one year, as required by Article 2 of the Extradition Treaty, which the sections of the criminal code for Oaxaca, Mexico also indicate; (5) there is ample evidence in the Extradition Packet to support the court's finding that there is probable cause to believe that Cruz

9

committed the crimes for which his extradition is sought, including the verified Complaint, which summarized the statements of two witnesses who claimed they saw Cruz shoot the two men. *Id.*, Docket No. 3 at 1-4; (6) the physical description and photographs of Cruz in the Extradition Packet show that the person being sought for extradition is the same person who is in custody; and (7) the formal papers and documents in support of Mexico's request for extradition have been presented in accordance with the laws of the United States and the Treaty. The Magistrate Judge certified his finding that Cruz is subject to extradition to the Secretary of State, as required by 18 U.S.C. § 3184 and ordered that Cruz be committed to the custody of the U.S. Marshal for this district, pending final disposition of this matter by the Secretary of State.

On January 30, 2014, Cruz filed this Amended Petition for Writ of Habeas Corpus, the second habeas petition he has filed in this matter. On February 4, 2014, this court terminated the first habeas corpus case Cruz had filed on June 27, 2013, case no. 3:13-cv-638.

## ANALYSIS

"The scope of habeas review of an extradition action is highly constrained: 'Habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting a finding that there was reasonable ground to believe the accused guilty.'" *In Re Extradition of Drayer*, 190 F.3d 410, 415 (6th Cir. 1999) (internal brackets omitted) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). The habeas court reviews purely legal questions *de novo* and purely factual questions under the clearly erroneous standard. *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986). For mixed questions of law and fact, "essentially factual" determinations are reviewed under the clearly erroneous standard, while determinations are reviewed *de novo* if they require "the court to consider 'legal concepts in the mix of fact and

law and to exercise judgment about values that animate legal principles.'" *Id.* (quoting *U.S. v. McConney*, 728 F.2d 1195, 1199-1204 (9th Cir. 1984)).

**This Court Has Jurisdiction**

The Magistrate Judge had subject matter jurisdiction over the extradition proceeding pursuant to 18 U.S.C. § 3184. This court has subject matter jurisdiction over the petition for writ of habeas corpus pursuant to 28 U.S.C. 2241(a). The court has personal jurisdiction because Cruz's home is located in this district, where he was located and arrested. Cruz does not dispute that he is the person sought by Mexico for extradition and that the court has jurisdiction over him.

**The Offenses Charged Are Covered by the Treaty**

As the Magistrate Judge correctly found, the offenses charged are covered by the Treaty. Cruz does not dispute this finding.

**There is Probable Cause to Sustain the Charges**

The habeas court must uphold an extradition judge's probable cause determination, "if there is any competent evidence in the record to support it." *Quinn*, 783 F.2d at 791 (citing *Fernandez*, 286 U.S. at 312). This court finds no error in the Magistrate Judge's finding of probable cause in this matter. As the Magistrate Judge found, there is ample evidence supporting a finding of probable cause. In fact, at the December 13, 2013 extradition hearing, Cruz expressly conceded that the documents the government had presented to the Magistrate Judge established probable cause. Case No. 3:13-mj-2013, Docket No. 61 at 5 (Hearing Transcript).

**Arguments of Cruz**

1. **Provisional Arrest**

Although he characterizes this matter as moot, Cruz urges that this court find that there was no urgency justifying his provisional arrest because it is capable of repetition yet evading review. Article 11(1) of the Treaty allows the provisional arrest of an accused person "[i]n the case of urgency." Treaty, 31 U.S.T. 5059, TIAS 9656. Article 11(3) further provides that this provisional arrest will be terminated if the requested country has not received a formal request for extradition and supporting documents within sixty days. *Id.*

Throughout the period of Cruz's detention, he has challenged his detention under the provisional arrest warrant, arguing that there had been no showing of urgency justifying this warrant. As noted above, Cruz filed his first habeas petition during the period when he was detained on the provisional arrest warrant. This court denied his petition, ruling that he would not be given bail and would continue to be detained pending the extradition proceedings. Cruz's brief to the Sixth Circuit argued at length that the provisional arrest warrant was not justified because there had been no showing of urgency. Brief for Appellant at 11–14, *Cruz Martinez v. U.S.*, No. 13-6027 (6th Cir. August 9, 2013). The Sixth Circuit opinion reviewing this court's ruling expressly addressed his challenge to the provisional arrest. The first and last sentences of the Court's opinion are as follows: "Avelino Cruz Martinez appeals the district court's denial of his request for release following his provisional arrest under Article 11 of the Extradition Treaty Between the United States of America and the United Mexican States. . . . The district court's order continuing Cruz's pre-extradition detention is AFFIRMED." *Cruz Martinez v. U.S.*, No. 13-6027 (6th Cir. October 8, 2013).

Cruz's arguments about the impropriety of his arrest and detention pursuant to the provisional arrest warrant have already been adjudicated by the Sixth Circuit and are not properly before this court at this time. The petition for writ of habeas corpus currently before the

court allows for review of the Magistrate Judge's Extradition Order entered on January 17, 2014, certifying that Mexico's *formal* request met all the requirements for extradition and, pursuant to that certification, committing Cruz to the custody of the U.S. Marshal pending a final extradition decision by the Secretary of State. The Magistrate Judge considered the formal extradition request and accompanying documents and completed the hearing required by 18 U.S.C. § 3184. All the elements this court is to consider in its "highly constrained" habeas review of the Extradition Order are satisfied. *Drayer*, 190 F.3d at 415.

2. **Lapse of Time**

    a. **The Sixth Amendment Speedy Trial Clause**

Cruz argues that, although the Sixth Amendment's right to a speedy trial does not apply directly to extradition proceedings, Article 7's clause that extradition is prohibited whenever "the law of the . . . requested party" bars prosecution allows him the benefit of both the U.S. statute of limitations and the Sixth Amendment right to a speedy trial. Cruz argues that the wording of Article 7 in the U.S.-Mexico Treaty is more generous than that of the prior treaty between these two countries and also is more generous than the wording of other extradition treaties. Many treaties prohibit extradition when it would be barred by the statute of limitations of the requesting or requested party. Cruz cites many treaties that use the language "barred by limitation" or "barred because of the statute of limitations," including the former U.S. - Mexico Treaty, which had the wording "barred by limitation." Extradition Treaty with Mexico, April 24, 1899, U.S.-Mexico, Art. 3, 31 Stat 1818. But the current Treaty replaced the "barred by limitation" clause with this wording: "barred by lapse of time according to the laws of the requesting or requested party." He argues that the broader wording of the current Treaty should be interpreted as incorporating Sixth Amendment rights into these proceedings.

13

The Sixth Circuit Court of Appeals has held that extradition treaty provisions do not incorporate U.S. constitutional protections. In *Drayer*, the Sixth Circuit held that the fourteen-year delay in Canada's issuance of an arrest warrant did not abridge the Fifth Amendment right to due process, because "there is no due process right to a speedy extradition." *Drayer*, 190 F.3d at 415 (quoting *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 829 (11th Cir. 1993)). Several district courts have rejected the argument that the lapse-of-time provision of Article 7 of the U.S.-Mexico Extradition Treaty incorporates the Sixth Amendment's right to a speedy trial. *See, e.g., In re Extradition of Gonzalez*, 2011 WL 5190047, at *2-3 (N.D. Cal. 2011); *In re Extradition of Flores Ortiz*, 2011 WL 3441618, at *6 (S.D. Cal. 2011). In addition, several courts of appeals have also held that similar treaty provisions related to lapse of time do not incorporate U.S. constitutional protections. *See, e.g., Yapp v. Reno*, 26 F.3d 1562, 1568 (11th Cir. 1994) ("Thus, we hold that the 'lapse of time' provision in Article 5 of the 1931 Extradition Treaty [between the U.S. and the Bahamas] refers to the running of a statute of limitations and not to a defendant's Sixth Amendment right to a speedy trial."); *Martin*, 993 F.2d at 829 ("It would make little sense to provide an extradition defendant indirectly with a right to a speedy trial under the Fifth Amendment when he enjoys no such right directly under the Sixth Amendment."); *In the Matter of Extradition of Kraiselburd,* 786 F.2d 1395, 1398 (9th Cir.1986) ("*Kamrin* [*v. United States*, 725 F.2d 1225 (9th Cir. 1984)] therefore compels us to reject Kraiselburd's contention that the Treaty provision on which he relies entitles him to additional protections under the Constitution."); *Jhirad v. Ferrandina*, 536 F.2d 478, 486 n. 9 (2nd Cir. 1976) ("We note, moreover, that the Sixth Amendment's guarantee to a speedy trial, limited by its terms to criminal prosecutions, is inapplicable to international extradition proceedings."). This court

similarly finds that the wording of the current U.S.-Mexico Treaty does not provide an extraditee with Sixth Amendment rights in the extradition process.

### b. The U.S. Statute of Limitations

Cruz argues that he cannot be extradited because the applicable U.S. statute of limitations has run. Article 7 prohibits extradition if the statute of limitations of either the requesting or requested party has run. Cruz concedes that the Mexican statute of limitations has not run. But he argues that the crime for which Mexico has sought extradition is most analogous to second-degree murder under U. S. law, because Mexico did not charge him under the section of Mexican law that requires proof of premeditation. Second-degree murder under U.S. law has a statute of limitations of five years.18 U.S.C. § 3282.

Cruz further argues that the international legal "doctrine of specialty" provides that an extraditee "shall be tried only for the offense with which he is charged in the extradition proceedings and for which he was delivered up," not for a different charge based on the same underlying conduct. *United States v. Rauscher*, 119 U.S. 407, 419 (1886). He also argues that the Treaty itself provides that "[a] person extradited under the present Treaty shall not be detained, tried, or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted." Treaty, Art. 17(1). He cites *Sainez v. Venables*, 588 F.3d 713, 716 (9th Cir. 2009), which held that "[i]n determining what United States statute of limitations is applicable, this Court looks to the substantive offense under United States law which is most closely analogous to the charged offenses, and applies the statute of limitations applicable to that offense." *Id.* at 716 (internal quotation marks and citation omitted).

The government cites Ninth Circuit case law for the proposition that courts are to focus on "the nature of [the extraditee's] conduct," and not on the specific "Mexican statute being applied

15

to that conduct." *Clarey v. Gregg*, 138 F.3d 764, 766-67 (9th Cir. 1998). Although the government concedes that Mexico cannot try Cruz for a different crime unless it fits a treaty exception to the rule of specialty, it contends that the doctrine of specialty is irrelevant to a determination of the most closely analogous crime to be used for determining the appropriate statute of limitations.

The government further argues that, even if the statute of limitations were five years, that was tolled in two ways. First, the government argues it was tolled by Mexico's issuance of an arrest warrant within that time period. Second, the government argues that it was tolled by 18 U.S.C. § 3290, which provides that [n]o statute of limitations shall extend to any person fleeing from justice." *See United States v. Greever*, 134 F.3d 777, 781 (6th Cir. 1998) (holding that, for 18 U.S.C. § 3290 to apply, the government must "prove by a preponderance of the evidence that [the extraditee] concealed himself with the intent of avoiding prosecution").

Be all this as it may, this court does not reach the questions of which statute of limitations applies in this case or whether Cruz was "fleeing from justice," because whichever statute of limitations period applies, it was tolled by the issuance of the Silacayoapan arrest warrant on February 24, 2006, less than two months after the shootings took place. This court finds persuasive the reasoning and holding by the Ninth Circuit in *Sainez*, in which the court held that, "for the purposes of a civil proceeding such as an extradition, a Mexican arrest warrant is the equivalent of a United States indictment and may toll the United States statute of limitations." *Id.* The court explained further:

> We do not reach this conclusion by attempting to analogize a Mexican arrest
> warrant to an American indictment. Rather, we reach this conclusion by adhering
> to our established approach of giving credence to foreign proceedings. Indeed, we
> have declined to rule on the procedural requirements of foreign law out of respect
> for other nations' sovereignty "and because we recognize the chance of erroneous

16

> interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles."

*Sainez*, 588 F.3d at 717.

### 3. Discovery Requests

Although the Magistrate Judge ordered the government to produce *Brady* material as required by Sixth Circuit precedent and the government maintains that it possesses no exculpatory materials, Cruz argues that the Magistrate Judge erred in not requiring the government to provide two categories of documents. First, he requests documents pertaining to 2009 communications between the U.S. consul and the Mexican authorities about Cruz's warrant. He is hopeful that these communications would reveal that the apparent failure of either government to pursue extradition at that time might indicate that government officials decided the warrant was invalid, the allegations were unreliable, or the case was not worth pursuing. The government represented to the Magistrate Judge that it had been advised that communications between Mexico and the United States did not contain exculpatory information. Case No. 3:13-mj-2042, Docket No. 4 at 11 (Hearing Transcript). Second, Cruz requests documents in the federal immigration file of one of the witnesses (who claimed to have seen the shooting) pertaining to the circumstances surrounding his deportation from the United States, which Cruz maintains is rumored to have been caused by the witness's sexual abuse of a minor.

In *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), the Sixth Circuit held that *Brady v. Maryland,* 373 U.S. 83 (1963), "should be extended to cover denaturalization and extradition cases where the government seeks denaturalization or extradition based on proof of alleged criminal activities of the party proceeded against." *Id.* at 353. The facts in the *Demjanjuk* case were extreme. Demjanjuk had been extradited on the basis of evidence in his denaturalization

case that led the district court to find that he was Ivan the Terrible, the notorious guard at the Treblinka extermination camp during the Holocaust, accused of committing mass murder. The *Demjanjuk* Court detailed at length the evidence that various agencies of the United States held but did not disclose during the extradition hearing that would have cast doubt on whether Demjanjuk was in fact the guard known as Ivan the Terrible. Without this information, Demjanjuk was extradited to Israel, where he was acquitted and ordered released by the Supreme Court of Israel. Even though he had been acquitted, the Sixth Circuit found his claims not to be moot because the collateral consequences of being found by the district court to be Ivan the Terrible required "corrective action." *Id.* at 355. The Sixth Circuit found the government's failure to disclose exculpatory evidence rose to the level of "prosecutorial misconduct that constituted fraud on the court." *Id.* at 356.

The Sixth Circuit subsequently explained in *Drayer* that the "seemingly broad language" contained in *Demjanjuk* "must be read in the context of a case that involved an unusual set of circumstances. . . . Specifically, in *Demjanjuk*, the United States had conducted its own investigation of the offense underlying the request for extradition and uncovered exculpatory material in the course of that effort. No such investigation occurred here; rather, the involvement of the United States can only be characterized as ministerial in the sense that it merely received factual information developed by Canadian authorities." *Drayer*, 190 F.3d at 414.

The government had no obligation to investigate or disclose the impeachment material Cruz believes to exist related to one of the witnesses to the alleged crime. "An extradition proceeding is not a forum in which to established the guilt or innocence of the accused; rather, the sole inquiry is into probable cause." *Id.* at 415; *see also Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005) ("An extradition proceeding is not a trial."). "An accused in an extradition

18

hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof. To do otherwise would convert the extradition into a full-scale trial, which it is not to be." *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981) (citations omitted). Cruz himself has conceded that there is probable cause in this matter. Docket No. 7 at 12 (Amended Petition for Writ of Habeas Corpus). The impeachment material Cruz seeks related to the witness against him would be helpful to him in his trial but would not change this court's determination that there is probable cause to support his extradition. As for the information Cruz seeks about communications between Mexico and the United States in 2009 about the warrant against him, that information, if it exists, also does not undercut the existence of probable cause in this matter. Those issues are more appropriately considered by the Secretary of State, to whom this court will certify his extraditability. 18 U.S.C. § 3184. The Secretary of State possesses the ultimate executive power and discretion to order the fugitive surrendered for extradition. 18 U.S.C. § 3186.

The facts in this case are comparable to those in *Drayer*. The United States government in this matter has not conducted its own investigation of the underlying offense and, as in *Drayer*, the government's role here is merely ministerial. The extradition process is not the proper forum for an extraditee to obtain or present to the court evidence to impeach a witness against him or to second-guess the motivations behind the timing of the Mexican and United States' government's actions. The Magistrate Judge did not err in his handling of discovery in this matter, as he required the government to disclose all exculpatory evidence extradition law requires.

**CONCLUSION**

Under the "highly constrained" scope of habeas review of this extradition action, this court finds that the extradition judge had jurisdiction, the offenses charged are covered by the Treaty, and there is probable cause to sustain those charges, all of which Cruz himself concedes. Cruz's other arguments are without merit. Accordingly, this court upholds the Magistrate Judge's January 17, 2014 Extradition Order, which certified Cruz for extradition and committed him to the custody of the U.S. Marshal. For the foregoing reasons, Petitioner's motion for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied and this action will be dismissed.

_____
ALETA TRAUGER
UNITED STATES DISTRICT JUDGE