UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AVELINO CRUZ MARTINEZ )
)
v. ) Case No. 3: 14-CV-00174
) JUDGE TRAUGER
UNITED STATES OF AMERICA, )
LOUISE W. KELTON, U.S. MARSHAL )

### Memorandum

On July 10, 2014, this court denied Petitioner's motion for a writ of habeas corpus under § 2241 and upheld the Magistrate Judge's January 17, 2014 Extradition Order, which certified Cruz for extradition to Mexico and committed him to the custody of the U.S. Marshals. Petitioner Avelino Cruz Martinez ("Cruz") now moves for a stay of this order pending appeal. For the following reasons, Cruz's motion for stay will be GRANTED.

### FACTUAL AND PROCEDURAL HISTORY

The court provided a thorough review of the factual and procedural history of this matter in its memorandum accompanying the order denying Cruz's petition for habeas corpus. (Docket No. 14.) Cruz was born in Mexico. In 1990, he gained lawful permanent resident status in the United States, although he continued to travel to Mexico to visit his family. On December 31, 2005, two men were killed in Silacayoapan, a small Mexican village in the state of Oaxaca. Witnesses identified Cruz as the shooter. On February 24, 2006, less than two months after the shootings, a Silacayoapan judge issued a warrant for Cruz's arrest for the killings.

Cruz represents that his father and brother have lived almost continuously in the same community where the shootings took place since 2005, but never were informed about this warrant. He further avers that his wife and children continued to live in the same Mexican

community until February 2007, at which time they moved to the United States to be with him. Cruz argues that it was common knowledge in his village that he had long lived permanently in the United States. Cruz states that he lived at the same address in Tennessee from 2006 until several years later, when he bought a house. He claims to have used his correct address on all federal immigration documents, on his application for a Tennessee driver's license in 2007, and on all of his federal income tax returns.

On September 11, 2009, a U.S. consular official at the U.S. Embassy in Mexico City sent a request to the Silacayoapan court asking about the outstanding warrant against Cruz. The Silacayoapan court entered an order stating that the warrant was "still pending and executable."

In May 2010, Cruz applied for U.S. citizenship using the same address he had listed on his driver's license, income tax returns, and immigration documents since 2006. He received U.S. citizenship in October 2010, thereby losing his Mexican citizenship. *See* 8 U.S.C. § 1448 (providing that the oath of naturalization requires renunciation of prior citizenship). In August 2011, Cruz filed an application with federal immigration authorities for his wife and children, who had moved to the United States to join him, so that they could obtain lawful permanent resident status. These family members returned to Mexico to obtain an immigration waiver from the U.S. consulate there, which was required to proceed with their lawful permanent residence applications.

On May 21, 2012, 6 years and 5 months after the shootings, Mexico submitted a request to the United States for Cruz's extradition based on the Silacayoapan warrant.

In late 2012 or early 2013, with this extradition request pending, Cruz traveled more than once to Mexico to meet with U.S. consulate officials to get the necessary immigration waivers

for his family. Neither Mexican nor American authorities took any action to detain Cruz or otherwise inform him of the warrant or extradition requests that were pending against him.

On June 11, 2013, seven and one-half years after the alleged crime and thirteen months after Mexico submitted its extradition request to the United States, the United States Attorney's office filed on behalf of the United Mexican States a complaint against Cruz, seeking his provisional arrest for the purposes of extradition, along with an affidavit and arrest warrant. The Magistrate Judge granted these motions, and the warrant issued on the same day.

On June 21, 2013, Cruz was arrested. On July 26, 2013, the Magistrate Judge entered an Order of Detention, concluding that Cruz had not shown he was not a flight risk nor that special circumstances existed which would have justified his release on bail, and ordering that he remain detained pending further proceedings in the case. (Docket No. 33.) On August 7, 2013, this court held a detention hearing and subsequently ordered that the Petitioner be detained until further order of the court. (Docket No. 15.) Cruz remains in detention.

On December 13, 2013, the Magistrate Judge held an extradition hearing based on the formal extradition request that had been filed. On January 17, 2014, the Magistrate Judge entered two orders. The first order denied Cruz's motion to deny certification for extradition. The second is the Extradition Order, in which the Magistrate Judge certified his finding that Cruz is subject to extradition to the Secretary of State, as required by 18 U.S.C. § 3184, and ordered that Cruz be committed to the custody of the U.S. Marshal for this district pending final disposition of this matter by the Secretary of State.

On January 30, 2014, Cruz filed an Amended Petition for Writ of Habeas Corpus, seeking this court's review of the Extradition Order pursuant to 28 U.S.C. § 2241. Under the highly constrained scope of habeas review of an extradition action, this court found that the

Magistrate Judge had jurisdiction, that the offenses charged are covered by the Treaty, and that there is probable cause to sustain those charges, all of which Cruz himself had conceded. The court found Cruz's other arguments to be without merit. Accordingly, this court denied Cruz's motion for a writ of habeas corpus under § 2241 and upheld the Magistrate Judge's January 17, 2014 Extradition Order, which certified Cruz for extradition and committed him to the custody of the U.S. Marshals.

## ANALYSIS

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433, (2009) (internal citations, quotation marks, and brackets omitted). When determining whether to grant such a stay, courts consider, "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 434 (internal quotation marks omitted). "These [four] factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *SEIU Local 1 v. Husted*, 698 F.3d 3431, 343 (6th Cir. 2012) (internal quotation marks and citation omitted).

The parties disagree about the proper standard for the court to use in determining the first factor. The Sixth Circuit "has interpreted these factors to require the applicant. . . to 'demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.'" *Green Party of Tennessee v. Hargett*, 493 F. App'x 686, 689 (6th Cir. 2012) (unpublished) (quoting *Family Trust Found. of Ky., Inc. v.*

*Ky. Judicial Conduct Comm'n*, 388 F.3d 224, 227 (6th Cir. 2004) (internal quotation marks omitted)). The Ninth Circuit addressed this question at length in *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011)

> There are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a "reasonable probability" or "fair prospect," as *Hollingsworth* [*v. Perry*, 558 U.S. 183, 190—91 (2010)], suggests; "a substantial case on the merits," in *Hilton*'s words, [*Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)]; or, as articulated in *Abbassi [v. I.N.S.,* 143 F.3d 513, 514 (9th Cir. 1998)], that "serious legal questions are raised." We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not. Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.

*Id.* at 967—68 (internal footnote omitted).

Petitioner argues that he has two legal arguments he wishes to appeal, each of which satisfies the first prong of the stay analysis. As this court's order denying Cruz's habeas petition outlined, Article 7 of the United States-Mexico Extradition Treaty prohibits extradition when prosecution for the offense for which extradition has been sought "has become barred by the lapse of time according to the laws of the requesting or requested Party." United States-Mexico Extradition Treaty, 31 U.S.T. 5059, TIAS 9656 (hereinafter the "Treaty").

As this court explained in greater detail in denying Cruz's habeas petition, Cruz argues that there are two ways in which the "laws" of the United States bar prosecution for the 2005 homicides. First, he argues that, based on the section of the Mexican criminal code under which he is charged, the applicable statute of limitations should be five years. The government has asserted that there is no limitations period. Each party has case law to support its position on this issue. Cruz further asserts that the statute of limitations was not tolled by the Mexican arrest warrant, nor by his being a "fugitive from justice," a label he denies applies to him.

5

In this court's order denying Cruz's habeas petition, it declined to reach the questions of which statute of limitations applied or whether Cruz could have been characterized as a "fugitive from justice" such that the statute of limitations would have been tolled. Instead, this court held that whichever statute of limitations applied, it was tolled by the issuance of the Silacayoapan arrest warrant on February 24, 2006, less than two months after the shootings took place. This court stated that it found persuasive the reasoning and holding by the Ninth Circuit in *Sainez v. Venables*, 588 F.3d 713 (9th Cir. 2009), in which the court held that, "for the purposes of a civil proceeding such as an extradition, a Mexican arrest warrant is the equivalent of a United States indictment and may toll the United States statute of limitations." *Id.* at 716.

Second, Cruz argues that the Sixth Amendment guarantee to a speedy trial bars his prosecution due to the lapse of time, which this court rejected based on the general rule that extradition treaties do not incorporate U.S. constitutional protections and the court's conclusion that this particular extradition treaty does not incorporate any such protection. Cruz argues that it is unclear that the court's conclusion as to the provisions of this particular treaty is correct, because whereas many treaties have protective clauses incorporating the language "statute of limitation," this particular treaty has broader language that incorporates all "laws" regarding the "lapse of time." He argues that the Sixth Amendment is a "law" regarding the "lapse of time" in a criminal prosecution, and, as such, it should be deemed to be incorporated by this particular treaty's language. He argues this conclusion would be consistent with the holding in *In re Extradition of Mylonas*, 187 F.Supp. 716 (N.D. Ala. 1960) and with Judge Carnes's dissent in *Yapp v. Reno*, 26 F.3d 1562 (11th Cir. 1994).

The court agrees with Cruz that the legal arguments he raises present rarely-litigated and difficult issues, and there is particularly a dearth of precedent in this circuit on these types of matters. The court finds Cruz's legal arguments to be well-articulated, well-argued, and supported with authority as well as possible given the scarcity of case law on these questions.[1] In sum, the court finds that Cruz's claims do raise "serious questions going to the merits," sufficient to satisfy the first prong of the stay analysis. *Family* Trust, 388 F.3d at 227.

Next, the court turns to the second prong of the stay analysis to consider whether denying Cruz a stay will subject him to "irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted." *Id.* The government concedes that Cruz's appeal will likely become moot if he is extradited before the appeal is decided. (Docket No. 20 at p. 12 n.4.) That Cruz will likely never have the opportunity to litigate his arguments before the court of appeals certainly constitutes irreparable harm. *See, e.g., Artukovic v. Rison* 784 F.2d 1354, 1356 (9th Cir. 1986) ("The possibility of irreparable injury to Artukovic if we deny his motion [for a stay pending appeal] is evident: his appeal will become moot and will be dismissed since the extradition will have been carried out."). The government argues that the State Department may choose not to extradite Cruz once the legal question of certification is final. The court finds that hypothetical possibility irrelevant to its analysis of whether Cruz will face irreparable harm based on this court's failure to issue a stay in order to enable him to pursue his legal arguments on appeal.

---

[1] Much of the authority cited by both parties consists of unpublished district court opinions from other circuits and a few cases from other circuits. For example, in arguing that Cruz's contention that the lapse of time language of Article 7 of the Treaty incorporates American constitutional speedy trial principles is often litigated and often found to be without merit, the government cites only four unpublished district court opinions, all from California.

Cruz also attaches to his motion a lengthy report by the U.S. State Department on the conditions of Mexican prisons from 2013 that details many problems prisoners face in Mexican prisons, including "frequent reports of citizens and foreign nationals [being] beaten, suffocated, tortured with electric shocks, raped, and threatened with death in the custody of arresting authorities;" poor health and sanitary conditions; guards who "occasionally place[] prisoners in solitary confinement indefinitely;" overcrowding that "threaten[s] health and life;" situations in which prisoners must "bribe guards to acquire food, medicine, and other necessities;" and authorities who hold "pretrial detainees together with convicted criminals." U.S. State Department, Country Reports on Human Rights Practices for 2013, Mexico, at pp. 7, 9, 15. Furthermore, the State Department report indicates that Mexico's National Human Rights Commission reported in September 2012 that "organized crime controlled 60 percent of prisons" and listed Oaxaca, where Cruz faces these criminal charges, as one of nine states with the "worst prison conditions" out of Mexico's thirty-one states. *Id.* at 10. That Cruz would be housed in a facility characterized as one of the worst in the country, in a country with overall poor prison conditions as documented by the U.S. State Department, constitutes irreparable harm to him.

The court turns next to the third factor in its stay analysis-- whether issuance of the stay will substantially injure the other parties interested in the proceeding. As the recitation of the factual and procedural history above demonstrates, although a Mexican court quickly issued an arrest warrant for Cruz, the Mexican government waited over six years to request Cruz's extradition, and the United States waited over a year to act on that request. Cruz has presented legal challenges to his extradition that are worthy of review and consideration by the court of appeals. The court does not believe staying its certification order to allow him to obtain review

from the court of appeals substantially injures the other parties in this proceeding, given their demonstrated lack of urgency in pursuing this matter.

Finally, the court must consider where the public interest lies. When the government opposes a stay, the traditional factors of harm to the opposing party and weighing the public interest merge. *Nken*, 556 U.S. at 435. The government urges that the public interest lies in ensuring that the United States abides by its treaty obligations such that other countries will honor their obligations to return individuals who have committed crimes here and fled to other countries. The court agrees that the United States' honoring of its treaty obligations is extremely important. But it does not agree that allowing an extraditee to obtain review of his legal claims interferes with the United States' ability to comply with its treaty obligations. This country prides itself on the legal process it affords those accused of crimes, even though that legal process takes time to complete. *Id.* at 427 ("The authority to hold an order in abeyance pending review allows an appellate court to act responsibly. A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review.").

The government quotes at length from the Supreme Court's discussion in the *Nken* case about how to weigh the public interest in cases in which a non-citizen with a deportation order seeks a stay to litigate the matter. In doing so, however, the government substantially alters the meaning of the quotation. The government substitutes "removal" in the Court's opinion with the word "surrender," and "persons" for the word "aliens" such that the resulting quotes read:

> [A]lthough "there is a public interest in preventing [persons] from being wrongfully [surrendered]," that is no basis for assuming the "absence of harm to the public interest if a stay is granted. There is "always" a public interest in

9

prompt execution of [surrender] orders. Therefore, [a] court asked to stay [surrender] cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor."

(Docket No. 20 at 5) (quoting *Knen*, 556 U.S. at 436).

It is a significant misrepresentation of the reasoning and holding of *Knen* to substitute important words in this manner, without explanation or justification, as though the rights afforded a citizen facing extradition are interchangeable with the rights afforded to a non-citizen facing removal under federal immigration law. To be clear, unlike Knen, Cruz has gone through the often lengthy and cumbersome process to become a *citizen* of this country.[2] In addition to the fact that Cruz is a citizen and Knen was an alien with no right to be present in the United States, the cases are different because *Knen* was a case arising in the immigration context and this is an extradition case. For the purpose of analyzing issues related to irreparable harm and the public interest, this is a critical distinction: "Aliens who are removed [from the United States] may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id.* at 435. This is in complete contrast to Cruz, a citizen of this country, who will almost certainly have no ability to have his case heard in the court of appeals without a stay.[3] In the context of a citizen facing extradition to another country, staying the extradition to

---

[2] Knen entered the United States on a transit visa, which only authorizes a citizen of a foreign country to enter into the United States for the purposes of passing through to another country. *Knen*, 556 U.S. at 422. He remained in the country and raised claims that he would be persecuted if returned to his home country. An immigration judge denied him relief, finding he was not credible. *Id.* The Board of Immigration Appeals affirmed, and the Court of Appeals for the Fourth Circuit denied his petition for review. Thus, Knen had been found to have no legal right to be present in the United States.

[3] As the 9th Circuit noted:

allow him to seek appellate review of his claims that the extradition is unlawful clearly is in the public interest.

In the immigration context, the Supreme Court has held that "[t]he interest in prompt removal may be heightened by the circumstances as well—if, for example, the alien . . . has substantially prolonged his stay by abusing the process provided to him." *Id*. Again, although the case at bar is not an immigration removal case, it is worth noting that there is no evidence in the record that Cruz has abused the process provided him. Cruz has raised his arguments about the lawfulness of his confinement and arguments against extradition early, often, and zealously. The time required to obtain rulings thus far in this matter has not been the result of delay on Cruz's part. Nor is his request to have his "serious questions" reviewed by the court of appeals in any way an abuse of the legal process. It appears to the court that all delays to Cruz's extradition have been caused, in turn, by the Mexican government, the United States government, and the time required by the courts to review the parties' legal claims. *See*, *id.*, at 421 ("It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. . . . A stay does not make time stand

---

> Before [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")], noncitizens were not permitted to pursue petitions for review once they had left (or were removed from) the United States because "the petition abated upon removal." [*Knen*, 556 U.S. at 435]. Therefore, the pre-IIRIRA automatic stay provision "reflected a recognition of the irreparable nature of harm" caused by removal: a noncitizens's removal prevented her from obtaining judicial review. *Id*. With IIRIRA, however, Congress permitted noncitizens to pursue their petitions for review even post-removal, "and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id*. Because Congress eliminated the source of categorical irreparable harm—the prohibition on pursuing petitions for review from abroad—Congress also did away with the automatic stay.

*Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011).

still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.").

Last, as previously mentioned, there is a scarcity of legal precedent on some of the issues Cruz has raised. There is particularly little circuit case law on some of the issues, and even less Sixth Circuit precedent to guide this court's analysis. The court believes that further development of the law on these issues to guide courts in this circuit and perhaps to serve as persuasive authority to courts in other circuits as well is also in the public interest.

In conclusion, although the Sixth Circuit has held that the four factors to be considered in determining whether to grant a stay to allow for appeal "are not prerequisites that must be met, but are interrelated considerations that must be balanced together" *SEIU Local 1*, 698 F.3d at 343, the court finds that each of the four factors weigh in favor of granting the stay. Balanced together, they certainly lead the court to the conclusion that a stay pending resolution of Cruz's appeal is appropriate in this matter.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for a stay pending appeal will be granted. An appropriate order will issue.

_____
ALETA TRAUGER
UNITED STATES DISTRICT JUDGE